**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LYNN SENTELLE PAYNE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2732** |
| **JOSEPH P. LOPINTO, III, ET AL.** | **DIVISIONS "5"** |

**ORDER AND REASONS**

Before the Court is the Motion for Summary Judgment Pursuant to F.R.C.P. 56 filed by Defendants, Sheriff Joseph P. Lopinto, III; Deputy Chief Sue Ellen Monfra; Jefferson Parish Sheriff's Office ("JPSO") Sergeant Christian Silbernagel; JPSO Captain Bryan Bordelon; JPSO Major Edward Olsen; and JPSO Lieutenant Chris Morris (collectively, "Defendants"). Plaintiff Lynn Sentelle Payne filed an opposition to the motion (rec. doc. 48) and Defendants filed a reply. (Rec. doc. 49). Also before the Court are the Motion for Appointment of Counsel (rec. doc. 50) and the Motion to Stay Consideration of Defendants' Motion for Summary Judgment, or Alternatively for Relief Under Rule 56(d), Extension of Time, and Reconsideration of Appointment of Counsel (rec. doc. 51) filed by Plaintiff. Having reviewed the pleadings and the applicable law, the Court rules as follows.

**I.      Background**

**A.      Plaintiff's Allegations**

Plaintiff filed his original Complaint against Defendants under 42 U.S.C. § 1983 on November 20, 2024. (Rec. doc. 1). In the original Complaint, Plaintiff alleged that "[he] was REFUSED the privilege and opportunity to be assigned to General Population because of the fact that I'm (Transgender). Not neither time did I request to be placed in Protective Custody,

or on Administrative Segregation, so I should be given the same equal opportunity as <u>ALL</u> other inmates and allowed into general population (per my request and consent)." (*Id.* at 6).

On August 18, 2025, Plaintiff filed an Amended Complaint (with leave of Court). (Rec. doc. 27).[1] In his Amended Complaint, Plaintiff alleges that "[b]etween September 27, 2024, and February 11, 2025, [he] experienced numerous instances of cruel, discriminatory, and abusive treatment while housed at JPCC . . . ." (*Id.* at 1). Plaintiff alleges that he was placed in "[s]egregation due to [his] sexual orientation – as a transgender male beginning on September 27, 2024." (*Id.*). Plaintiff avers that he suffered "[c]hronic neuropathy in [his] hands and feet – attributed to extreme isolation . . . without medical attention." (*Id.*).

Plaintiff maintains that he was subjected to targeted assaults by another inmate, Isaac Williams, who threw urine into his cell on January 3, 2025, and thereafter doused him and his cell with human feces and urine on January 5, 2025. (*Id.*). Surveillance footage reportedly captured both incidents, and "criminal charges were filed as a result." (*Id.*). Plaintiff alleges that because of these events, he was diagnosed with PTSD on February 11, 2025. (*Id.*).

### B.    Plaintiff's Classification and the Incidents at JPCC

On September 27, 2024, Defendant Silbernagel (as the Commander of the Classification Division for the Jefferson Parish Correctional Center ("JPCC")) informed Plaintiff that he was being referred to administrative segregation "[f]or your safety as well as the safe and orderly operation of this facility. You are a homosexual male inmate that has breast implants. Therefore, for your safety as well as the safe operation of this facility I am

---

[1] Although Plaintiff did not adopt the allegations of his original Complaint in his Amended Complaint, the allegations overlap between the two pleadings.

recommending you to administrative segregation." (Rec. doc. 45-4 at 3). The classification packet also includes an interview with Plaintiff from September 27, 2024. *Id.* In that interview, a form was completed in which Plaintiff responded to the sexual preference question that he was homosexual. (*Id.* at 6). The inmate profile for Plaintiff indicates that he is male. (*Id.* at 5). Plaintiff requested administrative review of his classification on September 28, 2024. (Rec. doc. 45-5). On October 2, 2024, at the administrative hearing, the Administrative Review Board ("the Board") agreed with Silbernagel's determination to keep Plaintiff on administrative segregation. (Rec. doc. 45-6).

On October 2, 2024, Plaintiff appealed the decision of the Board and their decision to keep him on administrative segregation. (Rec. doc. 45-7). A hearing of Plaintiff's appeal was held on November 4, 2024. (Rec. doc. 45-8). The Board again held that Plaintiff would remain on administrative segregation, to be reviewed in 30 days. (*Id.*). On November 4, 2024, Plaintiff submitted a grievance, complaining that he was placed on administrative segregation against his own consent because he is homosexual with breast implants. (Rec. doc. 45-9). He also complained that he hadn't appeared before the Board for seven days. (*Id.*). In response to this grievance, Silbernagel again stated that he was placed in administrative segregation for the safety and security of the facility, as well as his personal wellbeing. Silbernagel wrote: "At this time, the facility does not have a housing area for homosexual inmates." (Rec. doc. 45-7). On November 4, 2024, Plaintiff again appealed the decision of the Board. (Rec. doc. 45-11). On December 27, 2024, the Board again agreed with Silbernagel's determination to keep Plaintiff on administrative segregation. (Rec. doc.

3

45-12).  On December 27, 2024, Plaintiff again appealed the decision of the Board.  (Rec. doc. 45-13).

An administrative hearing on the appeal was held on January 27, 2025.  (Rec. doc. 45-14).  Again, the Board agreed with Silbernagel's determination to keep Plaintiff on administrative segregation, with a review set in 30 days.  (*Id.*).  On January 27, 2025, Plaintiff appealed that decision of the Board.  (Rec. doc. 45-15).  However, on February 11, 2025, a transfer authorization was executed, sending Plaintiff to Raymond Laborde Correctional into DOC custody.  (Rec. doc. 45-16).

Before the transfer, however, on January 2, 2025, Sergeant Yakaba Williams was notified that a battery had been committed in Pod 4DR.  (Rec. doc. 45-17).  Deputy James Mauk notified Central Control that Lynn Payne reported that inmate Isaac Williams threw urine on him from the toilet into his cell.  (*Id.*).  Surveillance video was reviewed and revealed Williams throwing liquid from his toilet into Payne's cell more than four times.  (*Id.*).  Payne advised that he wished to pursue criminal charges against Williams, and Williams was charged with Louisiana Revised Statute § 14:35, Simple Battery.  (*Id.*).

On January 14, 2025, Deputy Hewitt received a call from Deputy Alexander Godinez, who stated that an inmate in Pod 4D was throwing feces on another inmate (Plaintiff).  (Rec. doc. 45-18).  Deputy Hewitt arrived on scene and located brown liquid substances on the floor in front of Cell 5 and on the wall inside.  (*Id.*).  Officer Godinez informed Hewitt that while out at his one-hour shower, inmate Isaac Williams was seen by officer Godinez throwing feces into the cell of Inmate Payne.  (*Id.*).  Video surveillance captured the incident.

(*Id.*).  Payne wished to pursue charges, and Williams was again charged with Section 14:35, simple battery.  (*Id.*).

### C.    The Affidavit of Sgt. Silbernagel

Attached to Defendants' Motion for Summary Judgment is the Affidavit of Sgt. Silbernagel, one of the named Defendants in this lawsuit.  Silbernagel affirms in his affidavit that Plaintiff was not referred to administrative segregation based solely on the fact that he identifies as transgender.  (Rec. doc. 45-19 at ¶ 5).  Rather, Silbernagel maintains that Plaintiff was referred to administrative segregation for his safety as well as the safe and orderly operation of the JPCC.  (*Id.* at ¶ 6).  Silbernagel also affirms that the JPCC does not have a separate housing wing for inmates who identify as transgender.  (*Id.* at ¶ 7).  The JPCC has limited space and resources and cannot support a separate housing wing for inmates who identify as transgender.  (*Id.* at ¶ 8).  More importantly, it is crucial to recognize that it is the Parish of Jefferson, and not the JPSO – neither of which are defendants in this lawsuit – that is responsible for the construction and maintenance of the JPCC.  (*Id.* at ¶ 9).

## II.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party

will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Further, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted

evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

## III.    Law and Analysis

There are numerous reasons why Defendants should be granted summary judgment, which are outlined below.[2]

### A.    Plaintiff Fails to Assert Specific Claims Against Individual Defendants

As an initial matter, Plaintiff does not allege any facts specific to any Defendant in support of any of his claims. It is well established that "plaintiffs may not lump Defendants

---

[2] Throughout this Order and Reasons, the Court will construe Plaintiff's *pro se* Complaint and Amended Complaint liberally. "A document filed pro se is 'to be liberally construed,' *Estelle*, 429 U.S., at 106, 97 S.Ct. 285, and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' *ibid.* (internal quotation marks omitted)." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

together, without specifying separate factual allegations specific to each Defendant, as 'referring to the Defendants collectively prevents the Court from drawing the inference that [one individual Defendant] personally (or any other individual Defendant) acted with subjective deliberate indifference.'" *Mixon v. Pohlmann*, Civ. A. No. 20-1216, 2021 WL 6072501, at *9 (E.D. La. Dec. 23, 2021). For this reason alone, the Court can render summary judgment in favor of Defendants.

**B.    Plaintiff's Dissatisfaction With his Classification Is Not a Complaint of Constitutional Dimension**

To the extent that Plaintiff alleges a claim that he was misclassified and housed improperly in administrative segregation as opposed to general population due to his gender, Plaintiff's claim is not cognizable under the Constitution.

"Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." *Woods v. Edwards*, 51 F.3d 577, 581-582 (5th Cir. 1995). "Inmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), *abrogated on other grounds by Booth v. Churner*, 532 U.S. 732, 735 (2001); *accord Jones v. Roach*, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006); *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003). It is not sufficient for Plaintiff to claim that he was not classified in the group of his choice. Custodial classification is not a constitutional right.

It is also uncontested in this case that Plaintiff was referred to administrative segregation for his safety as well as the safe and orderly operation of the JPCC. (Rec. doc. 45-19 at ¶ 6). Silbernagel was within his rights to make the classification decision he made and this Court will not disturb it.

### C.      Plaintiff's Failure-to-Protect Claim Also Fails

"[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th 1996). Thus, regardless of whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Plaintiff in this case. *Hamilton v. Lyons*, 74 F.3d 99, 104 n.3 (5th Cir. 1996); *Hare*, 74 F.3d at 650.

In this case, what is at issue is Plaintiff's Constitutional right to be protected from violence at the hands of another inmate. *See Leal v. Wiles*, 734 F. App'x 905, 909 (5th Cir. 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994)) (discussing the prison officials' duty to protect inmates and detainees); *Hare*, 74 F.3d at 650. To state a Section 1983 failure-to-protect claim, Plaintiff must allege that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)). To satisfy the deliberate indifference element, a plaintiff must allege that the defendants "(1) were aware

9

of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Rogers v. Boatright*, 709 F.3d 403, 407-08 (5th Cir. 2013).  Thus, Plaintiff must allege that the official not only knew of and disregarded an excessive risk to inmate health or safety but that he also drew that inference.  *Farmer*, 511 U.S. at 837.  The risk of assault cannot be just any risk but must be "excessive."  *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).  This is because "[p]rison officials are not . . . expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

An inmate pursuing a claim for failure to protect may prove it by showing that the defendants knew of a specific threat to him but failed to take measures to protect him from it.  *Farmer*, 511 U.S. at 843.  In the absence of a specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns."  *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO and its Local No. 5-376 v. Champion Intern. Carp.*, 790 F.2d 1174 (5th Cir. 1986).  This situation arises in a jail or prison where officials allow "a pervasive risk of harm" and "fail[ ] to take reasonable steps to prevent the known risk."  *Stokes v. Delcambre*, 710 F.2d 1120 (5th Cir. 1983) (finding liability when the sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape).  "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."  *Farmer*, 511 U.S. at 843.  Negligence, however, on the part

of the prison officials does not rise to the level of a Section 1983 claim for deliberate indifference; nor does an official's failure to alleviate a significant risk that he should have perceived, but did not. *See Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001); *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001); *Jynes v. Orleans Par. Sheriff's Off.*, No. CV 25-1062, 2026 WL 790897, at *7-8 (E.D. La. Jan. 7, 2026), *report and recommendation adopted*, No. CV 25-1062, 2026 WL 194103 (E.D. La. Jan. 26, 2026)

In this lawsuit, the Court finds that Plaintiff has failed to meet this stringent burden of proof. There are no facts pleaded, nor any evidence adduced, from which the Court could draw an inference that any Defendant was aware of and deliberately disregarded a substantial risk of serious harm. The opposite is true. Plaintiff was referred to administrative segregation to specifically protect him from potential harm. (Rec. doc. 45-19 at ¶ 6). In fact, in both instances in which Plaintiff complained about harassment by another inmate, JPCC immediately investigated Plaintiff's claims and charged the perpetrator with simple battery. As outlined above, on January 2, 2025, Yakaba Williams was notified that a battery had been committed in Pod 4DR. (Rec. doc. 45-17). Deputy James Mauk notified Central Control that Lynn Payne reported that inmate Isaac Williams threw urine on him from the toilet into his cell. (*Id.*). Surveillance video was reviewed and showed Williams throwing liquid from his toilet into Payne's cell, more than four times. (*Id.*). Payne advised that he wished to pursue criminal charges against Williams, and Williams was charged with Section14:35, Simple Battery. (*Id.*).

And then, on January 14, 2025, Deputy Hewitt received a call from Deputy Alexander Godinez, who stated that an inmate on 4D was throwing feces on another inmate (Plaintiff).

11

(Rec. doc. 45-18). Deputy Hewitt arrived on scene and located brown liquid substances on the floor in front of Cell 5 and on the wall inside. (*Id.*). Officer Godinez informed Hewitt that while out on his one-hour shower, inmate Isaac Williams was seen by officer Godinez throwing feces into the cell of Inmate Payne. (*Id.*). Video surveillance captured the incident. (*Id.*). Payne wished to pursue charges and Williams was charged with Section 14:35, simple battery. (*Id.*). The officers responded appropriately to Plaintiff's concerns and charged William with a state crime. That is far from deliberate indifference. Moreover, there is no allegation that Plaintiff suffered any injury due to these two incidents. Absent a "physical injury resulting from the prison officials' purported failure to protect," a failure to protect claim fails. *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999); *see Jynes*, 2026 WL 790897, at *10. Plaintiff's failure-to-protect claim must fail.

### D.      Plaintiff's Equal Protection Claim

It also appears that Plaintiff asserts a claim under the Equal Protection Clause because he is transgender. The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations omitted); *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016).

To establish an equal protection claim, a plaintiff must first demonstrate that "two or more classifications of similarly situated persons were treated differently." *Duarte*, 858 F.3d at 353 (internal quotation marks and citations omitted). If a suspect class (such as race or religion) or a fundamental right is implicated, the courts apply "strict scrutiny." *Id.* at 353-

54. If not, the courts apply "rational basis review" and will uphold the classification if it bears a "rational relation to a legitimate governmental purpose." *Id.* at 354. To establish a violation of the Equal Protection Clause, a plaintiff also must prove "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted); *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007). The Equal Protection Clause "does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Wood*, 836 F.3d 538-39 (internal quotation marks and citation omitted).

Plaintiff's allegations fail to state a violation of the Equal Protection Clause. Plaintiff fails to provide specific allegations to indicate that JPCC officials subjected him to disparate and less favorable treatment due to his LGBTQ status, including his gender identity. *See Song v. Unknown Medical Admin.*, No. SA-22-CV-01144-XR, 2023 WL 2386892, at *2 (W.D. Tex. Mar. 6, 2023) (holding that detainee's general allegations that he was subjected to different treatment based on his LGBTQ status fail to indicate how he was treated differently or otherwise show disparate treatment); *Solis*, 2021 WL 3434991, at *7 (holding that "the Court need not consider . . . for purposes of screening" conclusory allegations of discrimination based on inmate's transgender status). Plaintiff otherwise fails to show that he was the victim of intentional and purposeful discrimination due to his LGBTQ or gender status. *Song*, 2023 WL 2386892, at *4. Conclusory allegations do not satisfy Plaintiff's burden here.[3]

---

[3] Because the Court dismissed any potential federal claims on the aforementioned grounds, it need not reach Defendants' additional argument that they are entitled to qualified immunity.

### E.       State-Law Claims

While it is unclear from both the Original and Amended Complaints, Plaintiff may also seek to assert similar claims under state law.  To the extent that he does, the Court will address them below.

Under Louisiana law, "[a] penal institution is not an insurer of an inmate against attacks by other inmates. The standard is that of reasonable or ordinary care." *See Parker v. State*, 282 So. 2d 483, 486 (La. 1973); *Williams v. State Through Dep't of Corr.*, 351 So. 2d 1273, 1273-74 (La. Ct. App. 1977)).  More specifically, "in order to hold the penal authorities liable for an injury inflicted upon an inmate by another inmate, the authorities must know or have reason to anticipate that harm will ensue and fail to use reasonable care in preventing the harm." *Williams*, 351 So. 2d at 1274.  As the Louisiana Supreme Court has held, "we must determine whether the penal authorities . . . had reasonable cause to anticipate harm to plaintiff and, if so, whether they failed to use reasonable care in preventing such harm." *State ex rel. Jackson v. Phelps*, 672 So. 2d 665, 667 (La. 1996).

This standard is not met when the defendant was not aware of a risk threatening the plaintiff or someone closely associated with the plaintiff.  For example, in *State ex rel. Jackson v. Phelps*, the Louisiana Supreme Court held that the defendants were not liable for the plaintiff's injuries because they "had no reasonable cause to anticipate harm to plaintiff." 672 So. 2d 665, 667 (La. 1996).  In that case, the plaintiff was attacked unexpectedly by a fellow inmate. *Id.* at 667.  The court noted that the attack occurred without warning to the plaintiff or to prison officials, that the plaintiff never notified the institution that he was afraid of being attacked by his assailant, and that the evidence indicated that no one expected any

14

hostility between the two inmates. *Id.*; *see also Williams*, 351 So. 2d at 1273 (holding that prison was not negligent when officials "had no forewarning of any danger to the plaintiff, and no one anticipated or foresaw any difficulty between the plaintiff" and his assailant). Here, the record reflects that no JPCC official knew of a specific risk of harm to Plaintiff other than Plaintiff's reports, which were addressed immediately and appropriately. (Rec. docs. 45-17, 45-18). Plaintiff never notified Defendants in advance that he feared that Williams might throw feces or urine into his cell. There was simply no forewarning. Plaintiff's state-law claims fare no better than his federal claims.

### F.    Plaintiff's Opposition

Plaintiff's general overarching complaint in his opposition is that there are still genuine issues of disputed fact in this lawsuit. This Court finds that that is not the case. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *DeLuca v. Atl. Refining Co.*, 176 F.2d 421, 423 (2d Cir. 1949)). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added).

Unsubstantiated assertions are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Krim v.*

*BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993).  A nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (additional citation omitted)).

Plaintiff presents this Court with no evidence to support his claims.  He only maintains that there remain disputed issues of fact.  Moreover, the Court finds that the facts that Plaintiff believes are disputed are not so.  Plaintiff states that one of the disputed facts is whether correctional officials had actual knowledge of repeated feces and urine assaults.  In his Complaint and Amended Complaint, Plaintiff complains of only two such incidents, both of which were viewed by correctional officers over the surveillance video, to both of which the correctional officers acted efficiently and appropriately, and both of which resulted in a charge of simple battery to the offending inmate.  (Rec. docs. 45-17, 45-18).  Plaintiff complains of no other incident and provides this Court with no evidence to contradict Defendants' evidence.  As another example, Plaintiff maintains that a disputed fact exists as to whether officials failed to take reasonable measures to protect Plaintiff.  But the same two documents cited above prove otherwise.  (*Id.*).  And, as noted above, there is no allegation – indeed, no evidence – that Plaintiff forewarned Defendants of any imminent attack by a fellow inmate.  Plaintiff's complaints are no more than conclusory allegations, improbable inferences, and unsupported speculation that cannot defeat Defendants' motion for summary judgment.

### G.        Plaintiff's Miscellaneous Motions

Also before the Court is the Motion for Appointment of Counsel (rec. doc. 50) and the Motion to Stay Consideration of Defendants' Motion for Summary Judgment, or Alternatively for Relief Under Rule 56(d), Extension of Time, and Reconsideration of Appointment of Counsel (rec. doc. 51), both of which were filed by Plaintiff.[4]

As to the Motion to Defer, pursuant to Rule 56(d), if a party served with a motion for summary judgment shows, by affidavit or declaration, that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it, (2) allow the non-moving party time to obtain affidavits or declarations or to take discovery, or (3) issue any other appropriate order.  Fed. R. Civ. P. 56(d).  To obtain the protections afforded by Rule 56(d), the party must state specific reasons why it is unable, without discovery, to present facts necessary to oppose the motion for summary judgment. *Id.*

In response to Defendants' motion for summary judgment, Plaintiff argues that he had requested surveillance footage and reports but appears to imply that he never received them.  The Court finds that that is not the case.  Indeed, on March 4, 2026, Plaintiff was provided with a copy of both the police reports in question for the incidents of which Plaintiff complains.  (Rec. doc. 49-1).

Further, on March 27, 2026, a Dropbox link containing the relevant video footage was sent to Plaintiff via the Warden's Office at Dixon Correctional Institute.  (Rec. doc. 49-2).  On

---

[4] Plaintiff also filed a second opposition to the motion for summary judgment (rec. doc. 52) – far beyond the deadline to do so.  While the Court – giving Plaintiff the benefit of the doubt – reviewed the opposition, it does not change the Court's conclusion that summary judgment is warranted here.

Monday April 13, 2026, Molly Maxwell with the Office of the Warden at Dixon Correctional Institute confirmed via email that Plaintiff had viewed the video and was asking if the videos had been provided to the clerk's office. (Rec. doc. 49-3).

Moreover, Plaintiff has never served Defendants with formal discovery and does not allege that he has. Yet Defendants provided the video and the reports. Plaintiff was provided with all the records attached to Defendants' motion for summary judgment, which included classification records, the only grievance filed during his period of incarceration, and all appeal board decisions. Plaintiff's motion is unwarranted and fails.

As to the motion to appoint counsel – and subsequent motion to reconsider that appointment of counsel[5] – the Court recognizes that its power to "appoint counsel" is derived from 28 U.S.C. § 1915(e)(1), which provides that the "court may request an attorney to represent any person unable to afford counsel." Plaintiff has neither a constitutional nor an automatic right to appointed counsel in a civil case. *See Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305, 1309 (5th Cir. 1977). Unlike a criminal defendant, an indigent civil rights litigant, even if currently incarcerated, does not have a right to appointed counsel absent "exceptional circumstances." *See Norton v. E.U. Dimazana*, 122 F.3d 286, 293 (5th Cir. 1997); *Akasike v. Fitzpatrick*, 26 F.3d 510, 512 (5th Cir. 1994); *Vitug v. Merit Sys. Protection Bd.*, Civ. A. No. 01-3297, 2002 WL 1216023 (E.D. La. June 4, 2002). Indeed, the federal court has considerable discretion in determining whether to make such an appointment in a civil case. *See Salmon v. Corpus Christi Indep. School Dist.*, 911 F.2d 1165, 1166 (5th Cir. 1990). The

---

[5] The Court cannot find evidence on the docket sheet that Plaintiff has ever sought counsel before the instant pleading.

Court has discretion to appoint counsel in such a case if doing so would advance the proper administration of justice. *See Ulmer v. Chancellor*, 691 F.2d 209, 212-13 (5th Cir. 1982); *Salmon*, 911 F.2d at 1166. The plaintiff bears the burden of persuasion as to the necessity of such an appointment. *See Caston*, 556 F.2d at 1310.

The evidence which must be adduced includes

(1) plaintiff's indigence and
(2) efforts made to secure counsel.
However, these are bare minimum threshold considerations. Additionally, the Court

should consider the following factors:

(a)     the type and complexity of the case;
(b)     whether the indigent is capable of presenting his case adequately;
(c)     whether he is in a position to investigate his case adequately; and
(d)     whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination.

*Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992); *Ulmer*, 691 F.2d at 213. The Court also considers whether appointment of counsel would be of service to the court and the defendant by sharpening the issues in the case. *Id.*

Having reviewed the pleadings related to the motion for summary judgment, this Court has concluded that summary judgment should be granted to Defendants. Plaintiff has demonstrated that he was able to enunciate the facts underlying his Section 1983 claim, and the Court does not find that counsel would be of assistance to it at this stage of the proceedings. Plaintiff has received discovery from Defendants – despite never formally propounding discovery on them – and the Court does not find that an attorney would be able

19

to uncover any more discovery to further Plaintiff's claims. There are no exceptional circumstances here, and any appointment of counsel now is unwarranted.

## IV.      Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Summary Judgment Pursuant to F.R.C.P. 56 filed by Defendants Sheriff Joseph P. Lopinto, III, Deputy Chief Sue Ellen Monfra, Jefferson Parish Sheriff's Office ("JPSO") Sergeant Christian Silbernagel, JPSO Captain Bryan Bordelon, JPSO Major Edward Olsen, and JPSO Lieutenant Chris Morris is **GRANTED**, and Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Motion for Appointment of Counsel (rec. doc. 50) and the Motion to Stay Consideration of Defendants' Motion for Summary Judgment, or Alternatively for Relief Under Rule 56(d), Extension of Time, and Reconsideration of Appointment of Counsel (rec. doc. 51) are **DENIED**.

New Orleans, Louisiana, this __5th__ day of_____August_____, 2026.

_____

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

20